STATE *vs.* JOHN DE FONTI.

STATE *vs.* JOHN CISCO *et al.*

APRIL 3, 1912.

PRESENT: Dubois, C. J., Johnson, Parkhurst, and Sweetland, JJ.

*(1)   Indictments.   Sufficiency of Accusation.*
An indictment charging defendant with manslaughter because of his unlawful sale of an intoxicating liquor, in which poison had been mixed, is insufficient without an allegation that defendant knew such intoxicating liquor was poisoned, or the allegation of facts from which such knowledge could be inferred, although his sale of the liquor was contrary to law.

*(2)   Indictments.   Sufficiency of Accusation.*
An indictment charging defendant with manslaughter, because of his alleged negligence in selling and delivering poison mixed with liquor, to be drunk by deceased, instead of whiskey which deceased requested, is sufficient without setting out the facts constituting the alleged negligence, or facts from which it could be inferred that defendant knew or should have known that the liquor contained the poison.

INDICTMENT.   Heard on questions of law certified under Gen. Laws, cap. 298, § 5.

RESCRIPT.

The first and second questions certified to us in each of the above entitled cases are answered in the affirmative and

the third and fourth questions in each case so certified are
answered in the negative and the papers in the cases with
certificates of our decision thereon will be sent back to the
Superior Court for Washington County for further pro-
ceedings.

The following opinion was prepared by Mr. Justice
Blodgett as the opinion of the Court, but was not formally
rendered on account of his death. It is now adopted as the
opinion of the court.

BLODGETT, J. These were two indictments returned by the
grand jury at the September session, 1910, of our Superior
Court for the county of Washington. Each indictment was
in two counts.

The first count of the De Fonti indictment charges that
the defendant on the 24th of April, 1910, at Charlestown,
in Washington County, "Did feloniously, unlawfully and
wilfully sell and suffer to be sold and deliver and suffer to be
delivered ale, wine, rum and other strong malt and intoxicat-
ing liquor, mixed liquor, a part of which was ale, wine,
rum and other strong malt and intoxicating liquor, in which
wood alcohol, a deadly poison had been mixed and mingled,
to one Timothy Riley for the use of and to be drunk by one
Michael Riley, which the said Timothy Riley then and there
delivered to the said Michael Riley. And the said Michael
Riley then and there not knowing that said poison was mixed
and mingled with said intoxicating liquor, did take, drink and
swallow down a large quantity of said poison, so mixed and
mingled with said intoxicating liquor as aforesaid, whereby
the said Michael Riley of the poison aforesaid and by the
operation thereof, and in consequence of said unlawful sale
by the defendant of said intoxicating liquor in which said
poison was then and there mixed and mingled, then and there
became mortally sick and distempered in his body, of which
said mortal sickness and distemper the said Michael Riley
at Charlestown aforesaid from the said twenty-fourth day of
April in the year aforesaid until the twenty-fifth day of

April in the year aforesaid did languish and languishing did
live.  On which said twenty-fifth day of April in the year
aforesaid the said Michael Riley at Charlestown aforesaid
of the said mortal sickness and distemper died, and so the
jurors aforesaid upon their oaths aforesaid do say that the
said John De Fonti, him the said Michael Riley in manner
and form aforesaid feloniously, wilfully and unlawfully did
kill and slay.  Against the form of the statute in such case
made and provided, and against the peace and dignity of the
State.''

The second count is as follows:—''  .  .  .  Did felon-
iously, unlawfully and negligently sell and suffer to be sold
and deliver and suffer to be delivered a certain quantity of
wood alcohol, a deadly poison, which was then and there
mixed and mingled with other liquids and liquors, a further
description of which is to the grand jurors unknown, to one
Timothy Riley, instead of whiskey, which the said Timothy
Riley then and there requested the said John De Fonti to
deliver and cause to be delivered to him for the use of and to
be drunk by one Michael Riley, which the said Timothy
Riley then and there delivered to the said Michael Riley.
And the said Michael Riley then and there, not knowing of
the said negligence of the said John De Fonti, and believing
that said mixed liquid containing said poison so delivered to
him by the said Timothy Riley as aforesaid was then and
there whiskey, did then and there drink and swallow down
into his body a large quantity of said mixed liquid containing
said poison, by means whereof and of said negligence of
said John De Fonti, the said Michael Riley then and there
of the poison aforesaid and by the operation thereof, on said
twenty-fourth day of April in the year aforesaid, became
mortally sick and distempered in his body, of which said
mortal sickness and distemper the said Michael Riley from
the said twenty-fourth day of April in the year aforesaid to
the twenty-fifth day of April in the same year, at Charles-
town aforesaid, did languish and languishing did live.  On
which said twenty-fifth day of April in the year aforesaid at

Charlestown aforesaid, he, the said Michael Riley did die. And so the jurors aforesaid, upon their oaths aforesaid, do say that him, the said Michael Riley, the said John De Fonti in manner and means aforesaid then and there feloniously, unlawfully and negligently did kill and slay. Against the form of the statute in such case made and provided, and against the peace and dignity of the state."

The counts in the Cisco indictment were identical, except that in each count the sale and delivery was alleged to have been made directly to deceased, rather than to an agent for deceased's use.

Upon defendants' demurrer to the indictments questions of law were certified to this court as follows, under Section 5 of Chapter 298 of the General Laws:—

## De Fonti Case.

"1. In an indictment charging the defendant with manslaughter because of his unlawful sale of an intoxicating liquor, in which wood alcohol, a poison, had been mixed and mingled, to an agent of deceased, for deceased's use, and which was drunk by deceased in ignorance of the presence of such poison, is it necessary to allege that defendant knew that such intoxicating liquor was poisoned?

"2. Is it necessary to allege facts from which such knowledge could be inferred?

"3. In an indictment charging the defendant with manslaughter, because of his alleged negligence in selling and delivering a quantity of wood alcohol, a deadly poison, mixed with some other liquor, to an agent of deceased, to be drunk by deceased, instead of whiskey, which such agent requested defendant to sell and deliver to him, and which deceased drank, believing it to be whiskey, is it necessary to set out the facts constituting such alleged negligence?

"4. Is it necessary to allege facts from which it could be inferred that defendant knew or should have known that such liquid contained wood alcohol?"

*Cisco Case.*

Questions two and four certified in this case are identical with two and four in the De Fonti case. Questions one and three are as follows:—

"1. In an indictment charging the defendants with manslaughter because of their unlawful sale of an intoxicating liquor, in which wood alcohol, a poison, had been mixed and mingled, to deceased, which was drunk by deceased in ignorance of the presence of such poison, is it necessary to allege that defendants knew that such intoxicating liquor was poisoned?"

"3. In an indictment charging the defendants with manslaughter because of their alleged negligence in selling and delivering a quantity of wood alcohol, a deadly poison, mixed with some other liquor, to deceased, to be drunk by deceased, instead of whiskey which deceased requested defendants to sell and deliver to him, and which deceased drank, believing it to be whiskey, is it necessary to set out the facts constituting the alleged negligence?"

(1)   We are of the opinion that the first count in each of these indictments is defective in that it does not charge the accused with knowledge of the poisoning of the liquor, although his sale of the whiskey was contrary to law. More than two hundred and fifty years ago and at the time of the first beginning of this colony it was said by Sir Matthew Hale, Lord Chief Justice of England, in his pleas of the Crown (pp. 429, 430, 475): "If a physician gives a person a potion without any intent of doing him any bodily hurt, but with an intent to cure or prevent a disease, and contrary to the expectation of the physician it kills him, this is no homicide, and the like of a chirurgeon, 3 E. 3 Coron. 163. And I hold their opinion to be erroneous, that think, if he be no licensed chirurgeon or physician, that occasioneth this mischance, that then it is felony, for physic and salves were before licensed physicians and chirurgeons; and therefore if they be not licensed according to the statute of 3 H. 8 cap. 11, or 14 H.

8 cap. 5, they are subject to the penalties in the statutes, but God forbid that any mischance of this kind should make any person not licensed guilty of murder or manslaughter.

"These opinions therefore may serve to caution ignorant people not to be too busy in this kind with tampering with physic, but are no safe rule for a judge or jury to go by."

. . .

"This doctrine therefore, that if any die under the hand of an unlicensed physician, it is felony, is apochryphal, and fitted, I fear, to gratify and flatter doctors and licentiates in physic, though it may, as I said, have its use to make people cautious and wary, how they take upon them too much in this dangerous employment."    . . .

"By the statute of 33 H. 8 cap. 6.  'No person not having lands, &c. of the yearly value of one hundred pounds *per annum* may keep or shoot in a gun upon the pain of forfeiture of ten pounds.'  Suppose therefore such a person not qualified shoots with a gun at a bird, or at crows, and by mischance it kills a by-stander by the breaking of the gun, or some other accident, that in another case would have amounted only to chance-medley, this will be no more than chance-medley in him, for though the statute prohibits him to keep or use a gun, yet the same was but *malum prohibitum*, and that only under a penalty, and will not inhance the effect beyond its nature."

And the same doctrine has been applied to the present time.    Thus in *Moynihan* v. *The State*, 70 Ind. 126, 130, the court observes:  "By the innocent administration of poison no penal law is violated, no moral turpitude is shown.    To hang a man for such a mistake, or incarcerate him for life, is a barbarity not inflicted by the law of any civilized and enlightened people."

The first and second questions certified to us in each case are therefore answered in the affirmative.

We are of the opinion that the second count in each indictment is sufficient.    The accused is here charged with negligently substituting wood alcohol, a deadly poison, for

whiskey which was ordered and paid for. Either the accused knew that he was delivering wood alcohol, a deadly poison, in place of whiskey, or he negligently represented the liquid so delivered to be whiskey without having any knowledge whether it was or was not the whiskey which had been called for. So acting in either event he must be held liable for the consequences of his act if it be proved at the trial. The third and fourth questions in each case are accordingly answered in the negative.

*William B. Greenough, Attorney General, Harry P. Cross, Assistant Attorney General,* for State.

*John W. Sweeney,* for defendant.